OPINION OF THE COURT
Ralph Yachnin, J.
Respondents made a motion, dated August 8, 1991, for an order determining the amount of uninsured motorist coverage, or in the alternative, for a hearing on such issue. The court could not, upon the papers submitted, determine what the amount of the uninsured motorist coverage is, i.e., $10,000/ *486 20,000 or $100,000/300,000. Accordingly, a hearing was ordered, and it took place on January 9 and 10, 1992.
THE FACTS
If a motorist asks his auto liability insurance company to increase his coverage, and it agrees to but never issues a written endorsement to the policy or bills the motorist for it, and if it then renews the six-month policy twice without showing any increased limits, and if then the insured has an accident, are the increased limits in effect? That is the novel question brought before the court in this case.
After hearing the evidence presented, the court finds all of the following to be the facts by a fair preponderance of the evidence:
The brother-in-law of Vincent Guarascio, the respondent, had an accident some time prior to January 1988. There was a problem with the amount of uninsured motorist coverage his brother-in-law was covered for, and this was related to respondent, Guarascio. Not wanting to be in the same position should he have an accident, this respondent went with his wife, Marsha Guarascio, the other respondent, to the Finegold Agency, an agent of State Farm Insurance Company, in January or February 1988. There he told Lloyd Baum, an employee of the agency, to increase the uninsured motorist coverage on both of the respondents’ cars, i.e., a 1970 Mercedes and a 1982 Lincoln, from $10,000/20,000 to $100,000/ 300,000. Mr. Baum went to his computer, made some notation thereon (which the respondents were unable to see), and then advised them that the matter had been taken care of.[1] Each car was covered by a separate policy.
The evidence adduced indicated that on January 28, 1988, the policy covering the Mercedes was increased as to uninsured motorist coverage from $10,000/20,000to $100,000/300,000, but the policy covering the 1982 Lincoln was not increased. Each of the policies was for a six-month period, and each was renewed in the middle of 1988 and at the beginning of 1989.
On June 17, 1989, the Lincoln was involved in an accident with an uninsured motorist. The respondents applied for arbitration based upon the $100,000/300,000 coverage. Ini *487 tially, petitioner denied coverage on the ground that the other vehicle involved in the accident was insured. Later, petitioner admitted that such other car involved in the accident had no insurance, but then it claimed that there was only $10,000/ 20.000 uninsured motorist coverage on the Lincoln.
It was conceded that Mr. Baum told respondents that they would be billed for the increased coverage, but they had no recollection of ever receiving a bill. Respondents claim they never looked at the policies to see if they had the $100,000/ 300.000 uninsured motorist coverage and that they could not have understood what was in the policies if they had read them.
The petitioner failed to produce Mr. Baum to testify in this matter and has presented no proof as to why he was not called to testify on its behalf. In addition, petitioner did not produce Patricia Cisek, a State Farm claims examiner who had spoken to the respondent about the matter. After the accident, Patricia Cisek told Mr. Guarascio, in a telephone conversation, that the Lincoln did indeed have the increased coverage on the date of the accident, and that he should contact the Finegold Agency to obtain a letter to that effect. The agency had been instructed by petitioner to issue such letter. When Mr. Guarascio contacted petitioner’s agent, the Finegold Agency, he was informed by an employee named Eric that he could pick up the letter from the agency. When he appeared at the agency to pick it up, Mr. Guarascio was told by Mr. Baum that no letter would be issued.
Although Mr. Baum gave the respondents the auto policy status report for the Mercedes, Mr. Baum refused to give them an auto policy status report with respect to the Lincoln. In addition, the petitioner failed to produce these reports for the Lincoln at the hearing.
This court finds that the policy covering the Lincoln was modified to include the increased ($100,000/300,000) uninsured motorist coverage. Hence, the next issue to be determined is whether petitioner had the right to alter the contract thereafter, to reduce such coverage, without notifying the respondent. The court finds that it did not. In Hay v Star Fire Ins. Co. (77 NY 235, 239-240 [1879]), Chief Judge Church wrote, in pertinent part, as follows:
“An agreement to renew a policy implies that the terms of the existing policy are to be continued, and this would be so of any instrument, in the absence of evidence, that a change was intended. * * *
*488 "It was bad faith on the part of the defendant to change so radically the terms of the policy, and deliver it as a policy simply renewing the old one, without notice of the change. A party, whose duty it is to prepare a written contract, in pursuance of a previous agreement, to prepare one materially changing the terms of such previous agreement, and deliver it as in accordance therewith, commits a fraud which entitles the other party to relief according to the circumstances presented. Equity will reform a written instrument in cases of mutual mistake, and also in cases of fraud, and also where there is a mistake on one side, and fraud on the other. * * * The negligence of the plaintiff in not discovering the change and loches, in not sooner seeking relief, are questions which make the propriety of granting relief in a given case, discretionary. The court below upon the findings of fact we think properly exercised its discretion in this case in granting relief. Policies of fire insurance are rarely examined by the insured. The same degree of vigilance and critical examination would not be expected or demanded as in the case of some other instruments.” (Emphasis in original.)
In Byron v Liberty Mut. Ins. Co. (63 AD2d 710 [2d Dept 1978]), the court stated, inter alia: "Only if a change in a renewed policy is not brought to the insured’s attention at the time the change is made, is the insured entitled to reform the agreement so as to conform it with the earlier one”.
Petitioner argued, inter alla, that even if the policy was initially improperly written, petitioner is absolved from the increased responsibility by reason of having issued renewals on two occasions. The court disagrees. In this case, what petitioner is in effect saying is that it could perpetuate its mistake or fraud,[2] whichever it might be, by issuing a renewal. As noted in the Hay case (supra), to permit petitioner to succeed in such logic would be wrong. Moreover, automobile policies are on a par with fire insurance policies in not being read by insureds. (Hay v Star Fire Ins. Co., supra.) This then also answers petitioner’s contention that respondents received the two renewals and did not examine them.
*489 The court notes as well that although insurance policies are contracts, the policies are products which are sold by insurance companies. The respondent’s part of the contract was to pay for the product, while the petitioner’s obligation was to deliver a contract in accordance with that which was ordered. This petitioner here did not do. Therefore, the court will rectify petitioner’s error from the onset of respondents’ request for increased coverage and continue that correction through to the policy in effect on the date of the accident.
Petitioner’s argument to the effect that respondents should not prevail here because they never paid for the increased coverage is without merit. To begin with, there is no evidence that they were billed for such increased coverage. Certainly, conversely, if petitioner had given respondents the increased coverage which they were entitled to, and if petitioner mistakenly did not bill respondents for such increased coverage, and if there had been no accident, petitioner would seek to recover the premium during such unpaid period if it found out about the nonpayment — even after the policy had expired.
In view of all of the foregoing, this court finds for the respondents to the effect that respondents are entitled to increased uninsured motorist coverage as of the date of the accident, June 17, 1989, in the amount of $100,000/300,000, under the policy issued by State Farm Mutual Automobile Insurance Company policy covering the 1982 Lincoln automobile.

. It was stipulated at the hearing that notification to Mr. Baum was deemed notification to the petitioner, for the Finegold Agency was not just a broker but an agent of the petitioner.

. Was it a mistake or fraud? Why wasn’t Lloyd Baum called as a witness by the petitioner? Why wasn’t Patricia Cisek called as a witness by the petitioner? "The failure of a party to call a witness, within its power to produce, and who such party would naturally be expected to call, will permit an unfavorable inference against said party”. (Richardson, Evidence § 92 [Prince 10th ed].) No evidence was introduced to the effect that these witnesses were unavailable.